15 MAG          1779         ORIGINAL

Approved: _____
RICHARD A. COOPER
Assistant United States Attorney

Before:   HONORABLE JAMES C. FRANCIS IV
          United States Magistrate Judge
          Southern District of New York

U.S. DISTRICT COURT FILED MAY 27 2015 S.D. OF N.Y.

DOC # 1

- - - - - - - - - - - - - - - - - - - X
                                      :   COMPLAINT
UNITED STATES OF AMERICA              :
                                      :   Violation of 21 U.S.C.
         - v. -                       :   § 846
                                      :
JUAN HERNANDEZ-TORRES,                :   COUNTY OF OFFENSE:
   a/k/a "Viejo," and                 :   BRONX
JUAN DOMINGUEZ,                       :
   a/k/a "Johnny,"                    :
                                      :
                  Defendants.         :
                                      :
- - - - - - - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

          MARK A. HADZEWYCZ, being duly sworn, deposes and says that he is a Special Agent with the Drug Enforcement Administration ("DEA"), and charges as follows:

                              COUNT ONE

          1.   From at least in or about November 2014, up to and including on or about May 26, 2015, in the Southern District of New York and elsewhere, JUAN HERNANDEZ-TORRES, a/k/a "Viejo," and JUAN DOMINGUEZ, a/k/a "Johnny," the defendants, and others known and unknown, intentionally and knowingly, did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

          2.   It was a part and an object of the conspiracy that JUAN HERNANDEZ-TORRES, a/k/a "Viejo," and JUAN DOMINGUEZ, a/k/a "Johnny," the defendants, and others known and unknown, would and did distribute and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

3.      The controlled substance that JUAN HERNANDEZ-TORRES, a/k/a "Viejo," and JUAN DOMINGUEZ, a/k/a "Johnny," the defendants, conspired to distribute and possess with intent to distribute was 500 grams and more of mixtures and substances containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers, in violation of Title 21, United States Code, Section 841(b)(1)(A).

(Title 21, United States Code, Section 846.)

The bases for my knowledge and the foregoing charge are, in part, as follows:

4.      I am a Special Agent with the DEA. I have been personally involved in the investigation of this matter. This Affidavit is based upon my personal participation in the investigation, my examination of reports and records, and my conversations with other law enforcement agents and other individuals. Because this Affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

5.      Since at least November 2014, the DEA has been involved in an investigation of a drug trafficking organization (the "DTO") based in the Bronx, New York, which distributes cocaine, heroin, and methamphetamine in and around the New York City area. In the course of this investigation, the DEA has been assisted by a cooperating witness, who has pled guilty to federal crimes pursuant to a cooperation agreement, and is providing information and assistance to law enforcement in the hope of obtaining a more favorable sentence. Information provided by CW-1 has proven to be reliable and has been corroborated by, among other things, review of recorded conversations, numerous arrests, and seizures of narcotics.

6.      From my conversations with CW-1 and my participation in this investigation, I have learned, among other things, that:

a.      On or about November 30, 2014, at the direction of law enforcement, CW-1 met with JUAN HERNANDEZ-TORRES, a/k/a "Viejo," the defendant, in the Bronx, New York. That conversation was consensually recorded by CW-1.

2

b. From my conversations with another law enforcement agent who reviewed the recording of that meeting, which took place in Spanish, I have learned that during the meeting, HERNANDEZ-TORRES said that he was able to provide "maria" and "pedro." Based on my training and experience and participation in the investigation, I believe that "maria" is a term commonly used by narcotics traffickers to refer to heroin, and "pedro" is a term commonly used by narcotics traffickers to refer to cocaine.

7. From my participation in this investigation, I have learned that on March 11, 2015, the Honorable Katherine B. Forrest, United States District Judge, Southern District of New York, issued an order authorizing the interception of wire communications occurring over a cellular telephone on which JUAN HERNANDEZ-TORRES, a/k/a "Viejo," the defendant had spoken with CW-1 (the "First HERNANDEZ-TORRES Cellphone").

8. I have reviewed line sheets reflecting draft translations of Spanish communications intercepted on the First HERNANDEZ-TORRES Cellphone. Following are selected communications from the First HERNANDEZ-TORRES Cellphone:

a. On March 20, 2015, CW-1 spoke to HERNANDEZ-TORRES. During that telephone call, the following was discussed, in substance and in part:

CW-1: What me and my partner want to do is, we want to go to you, grab some from you, take care of that right away, right. Go to the place and from there we are going to see, if we are going to do the line with him, understand?

HERNANDEZ-TORRES: Well, let me know, I'm going to be around. I'm going to Pennsylvania to take some to someone.

CW-1: Okay. Save some for me there, not everything, leave half there, after Monday I'm going to order what I want, because you are going to keep taking care of things, understand? The thing is that we have to make a line from this thing, that's new with this person understand?

HERNANDEZ-TORRES: Okay.

CW-1: I want half for Monday, don't give it to anybody, if you are going to sell it, let me know, so that I won't even go to those people, understand?

HERNANDEZ-TORRES: Alright.

CW-1: Save half for me, for early Monday. Because we are going to make a line over there to that place, with this new thing, because they in love with something else something that's not the same as before, understand? So we want to give to different people, understand?

HERNANDEZ-TORRES: That's good and beautiful.

    b. Based on my training and experience, and participation in this investigation, in the conversation described above, I believe that CW-1 is requesting to purchase methamphetamine from HERNANDEZ-TORRES ("*we want to go to you, grab some from you*"). CW-1 requests a half pound of methamphetamine ("*Save some for me there, not everything leave half there*"). HERNANDEZ-TORRES agrees to conduct the transaction with CW-1 on Monday ("*That's good and beautiful*").

    c. On March 22, 2015, at approximately 8:21 p.m., CW-1 and HERNANDEZ-TORRES spoke on the telephone. During that telephone call, the following was discussed, in substance and in part:

CW-1: Just half for tomorrow. Have it ready.

HERNANDEZ-TORRES: Alright.

CW-1: So we meet up at 12:00, on your block?

HERNANDEZ-TORRES: At 12:00 here, between 12:00 and 12:30. Is that okay?

CW-1: That's fine.

HERNANDEZ-TORRES: Call me. I get out at 12:00 o'clock.

CW-1: Okay, see you there around 12:30 then.

HERNANDEZ-TORRES: Exactly, okay.

        d.  On March 22, 2015, at approximately 8:26 p.m., HERNANDEZ-TORRES spoke on the telephone with an individual later identified as JUAN DOMINGUEZ, a/k/a "Johnny." During that telephone call, the following was discussed, in substance and in part:

| | |
|---|---|
| HERNANDEZ-TORRES: | Okay, Johnny. I got a call. |
| DOMINGUEZ: | Okay, what happened? |
| HERNANDEZ-TORRES: | No, the one here, from your place, on that side. |
| DOMINGUEZ: | Okay. |
| HERNANDEZ-TORRES: | They want me to sell them half. |
| DOMINGUEZ: | Today? |
| HERNANDEZ-TORRES: | No, Monday, tomorrow at 12:30. |
| DOMINGUEZ: | It's fine. You're the one who knows. |
| [. . .] | |
| HERNANDEZ-TORRES: | Okay, you have to be on this side because we'll sell it to him and... I know that the guy is always on time with the work. Be there at my place around 12:00. Take the one that it's open, weigh it |
| DOMINGUEZ: | You have the scale. |
| HERNANDEZ-TORRES: | That's true. It's 1/2 of the one that you have opened there. |
| DOMINGUEZ: | I know but... |
| HERNANDEZ-TORRES: | It can be weighed on any scale. |
| DOMINGUEZ: | Okay, I will get one. |
| HERNANDEZ-TORRES: | Or you can come to get this one. I will be home. |
| DOMINGUEZ: | I will get one. I call you later. I am on the other line. |

5

> HERNANDEZ-TORRES:     Okay, it's for us to start doing something.

        e.   Based on my training and experience, and my participation in this investigation, in the telephone call described above, I believe that HERNANDEZ-TORRES is updating DOMINGUEZ on the proposed methamphetamine transaction with CW-1 ("*They want me to sell them half*"). HERNANDEZ asks DOMINGUEZ to prepare the methamphetamine ("*Be there at my place around 12:00. Take the one that I's open, weigh it*").

        f.   On March 23, 2015, at approximately 1:28 p.m., HERNANDEZ-TORRES and DOMINGUEZ spoke on the telephone. During that telephone call, the following was discussed, in substance and in part:

> DOMINGUEZ:            What do they want, half?
>
> HERNANDEZ-TORRES:     Yes, the half.
>
> DOMINGUEZ:            Okay, I have to go and get something to weigh.
>
> HERNANDEZ-TORRES:     What was that?
>
> DOMINGUEZ:            I have to go get something to weigh it.
>
> HERNANDEZ-TORRES:     Oh, you haven't weigh it?
>
> DOMINGUEZ:            No, I do not have the scale. You have it.
>
> HERNANDEZ-TORRES:     Alright, take all of it, and head over there.
>
> DOMINGUEZ:            To your house?
>
> HERNANDEZ-TORRES:     Yes.

        g.   Based on my training and experience, and my participation in this investigation, in the telephone call described above, I believe that DOMINGUEZ and HERNANDEZ-TORRES are confirming that they will sell a half pound of methamphetamine, and DOMIGNUEZ advises that he will need to find a scale to weigh the narcotics ("*I have to go and get something to weigh*").

        9.   From my participation in this investigation and my conversations with other law enforcement agents, I have

6

learned, among other things, that:

   a. On or about March 23, 2015, at approximately 2:51 p.m., I was conducting surveillance at a location in the Bronx, New York, and observed JUAN HERNANDEZ-TORRES, a/k/a "Viejo," and JUAN DOMINGUEZ, a/k/a "Johnny," the defendants, meet with CW-1.

   b. Later in the afternoon on or about March 23, 2015, another law enforcement agent and I spoke with CW-1, and from that conversation, I have learned, in substance and in part, that CW-1 met with HERNANDEZ-TORRES and DOMINGUEZ in the Bronx, New York. During that meeting, CW-1 provided approximately $4,750 to HERNANDEZ-TORRES and DOMINGUEZ, and CW-1 was provided with a bag containing a white crystal substance that later field-tested positive for the presence of methamphetamine and was found to weigh approximately one-half pound.

   10. From my participation in this investigation, I have learned that on May 11, 2015, the Honorable Deborah A. Batts, United States District Judge, Southern District of New York, issued an order authorizing the interception of wire communications occurring over another cellular telephone which JUAN HERNANDEZ-TORRES, a/k/a "Viejo," the defendant, was using (the "Second HERNANDEZ-TORRES Cellphone").

   11. I have reviewed line sheets reflecting draft translations of communications intercepted on the Second HERNANDEZ-TORRES Cellphone. Following are selected communications from the Second HERNANDEZ-TORRES Cellphone:

   a. On May 23, 2015, at approximately 7:09 p.m., HERNANDEZ-TORRES and DOMNINGUEZ spoke with CC-1, using HERNANDEZ's cellular telephone. During that conversation, the following was discussed, in substance and in part:

   DOMNINGUEZ:   Tell me, Pablo.

   CC-1:         I'm here.

   DOMNINGUEZ:   Is everything good?

   CC-1:         Tell me.

   DOMNINGUEZ:   I was going to tell you that have [sic] a rented car. I don't know if you want me to head down there or what?

| | |
|---|---|
| CC-1: | No, it needs to have a compartment. |
| DOMNINGUEZ: | That's the problem. I don't have that. It's a new SUV, do you understand me? And it's because this type of weekend too. |
| CC-1: | They want it to have special seats. |
| DOMNINGUEZ: | Okay. [PAUSE] There is none of those car/vans. That's the only SUV available. |
| CC-1: | Let me call him and tell them. I will call you back. |
| DOMNINGUEZ: | No, problem. It's a new Durango. |
| CC-1: | Okay. |

      b.    Based on my training and experience, and participation in this investigation, in the conversation described above, I believe that DOMINGUEZ is reporting that he has a car ready to drive to North Carolina to pick up narcotics from CC-1.

      c.    On May 24, 2015, at approximately 1:38 p.m., HERNANDEZ-TORRES spoke with DOMINGUEZ. During that conversation, the following was discussed, in substance and in part:

| | |
|---|---|
| DOMINGUEZ: | Talk to me. What's up? |
| HERNANDEZ-TORRES: | No, you're the one who knows. |
| DOMINGUEZ: | I just need to see you. |
| HERNANDEZ-TORRES: | Come here. |
| DOMINGUEZ: | Uh, I have everything ready to leave. I can leave tonight. I'm going with the woman. The only thing I wanted to tell you is that I don't have money for that trip. You have to tell Pablo that I don't have money to go up there nor to come back. |
| HERNANDEZ-TORRES: | Come here so we can coordinate. |
| DOMINGUEZ: | Yeah, so let me finish things on this side and then I'll cross that way. |

8

| | |
|---|---|
| HERNANDEZ-TORRES: | Okay. |
| DOMINGUEZ: | Because I have to take care of a couple of things here. Besides, my sister went with the kids to the lakes. She has the SUV. I'll wait until she comes so we can exchange vehicles. |
| HERNANDEZ-TORRES: | No problem. |

        d.    Based on my training and experience, and participation in this investigation, in the conversation described above, I believe that DOMINGUEZ is reporting to HERNANDEZ-TORRES about the trip he is going to take to North Carolina to pick up narcotics from CC-1.

        e.    On May 24, 2015, at approximately 10:27 p.m., HERNANDEZ-TORRES spoke with CC-1. In that conversation, the following was discussed, in substance and in part:

| | |
|---|---|
| HERNANDEZ-TORRES: | It's better. Johnny is leaving later. You heard? Hello? |
| CC-1: | Tell me Rene, tell me. |
| HERNANDEZ-TORRES: | Johnny is leaving like in one hour. |
| CC-1: | In one hour? |
| HERNANDEZ-TORRES: | Yes, he's leaving... he wants to get there early. |
| CC-1: | Well... [Unintelligible] |
| (Voices overlap) | |
| HERNANDEZ-TORRES: | So you can get up around five, four thirty. |
| CC-1: | [Unintelligible] Rene. |
| HERNANDEZ-TORRES: | That's a good time... |
| CC-1: | Exit 111 on 85. |
| HERNANDEZ-TORRES: | Okay, he is going to call you, but I'm going to tell him now it's on exit 111 on 85. |

CC-1:                    Yes so he doesn't call me and call me on the road, you get me?

HERNANDEZ-TORRES:    Okay, okay.

        f.   Based on my training and experience, and participation in this investigation, in the conversation described above, I believe that CC-1 is providing directions to a meeting location so that HERNANDEZ-TORRES can communicate that location to DOMINGUEZ. In particular, CC-1 is directing that DOMINGUEZ come to Exit 111 on Interstate 85.

        12.  I have reviewed prospective location information for a cellular telephone used by DOMINGUEZ (the "DOMINGUEZ Telephone"), which information was obtained pursuant to a warrant issued by Henry B. Pitman on or about May 4, 2015, and from that review I have learned, among other things, that on the morning of May 25, 2015, the DOMINGUEZ Telephone began moving south from the New York City area. At approximately 4:20 p.m., the DOMINGUEZ Telephone was located near Exit 111 on Interstate 85 in North Carolina. On or about the morning of May 26, 2015, the DOMINGUEZ Telephone began moving north from North Carolina.

        13.  I and other law enforcement agents conducted surveillance of a vehicle that DOMINGUEZ was driving northbound through New Jersey (the "DOMINGUEZ Vehicle"). Law enforcement agents stopped the DOMINGUEZ Vehicle in Brooklyn, New York, and DOMINGUEZ was arrested.

        14.  From my conversations with other law enforcement agents, I have learned, among other things, that in the afternoon of May 26, 2015, law enforcement agents arrested JUAN HERNANDEZ-TORRES, a/k/a "Viejo," the defendant, at HERNANDEZ-TORRES's apartment in the Bronx, New York. Prior to his arrest, HERNANDEZ-TORRES consented to a search of his apartment, and law enforcement agents recovered a firearm during the ensuing search.

WHEREFORE, the deponent respectfully requests that JUAN HERNANDEZ-TORRES, a/k/a "Viejo," and JUAN DOMINGUEZ, a/k/a "Johnny," the defendants, be imprisoned, or bailed, as the case may be.

_____
MARK A. HADZEWYCZ
Special Agent
Drug Enforcement Administration

Sworn to before me this
27th day of May, 2015.

_____
THE HONORABLE JAMES C. FRANCIS IV
United States Magistrate Judge
Southern District of New York